STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 0981

CHET MORRISON CONTRACTORS, L.L.C.

VERSUS

SPARTAN DIRECTIONAL, LLC

*Judgment Rendered:* JUN 1 4 2024

\* \* \* \* \* \* \* \*

Appealed from the
32nd Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Case No. 183674, Division A

The Honorable Timothy C. Ellender, Judge Presiding

\* \* \* \* \* \* \* \*

| | |
|---|---|
| Robert R. Johnston<br>Constance C. Waguespack<br>Courtney E. Crowell<br>New Orleans, Louisiana | Counsel for Plaintiff/Appellant<br>Chet Morrison Contractors, L.L.C. |
| Robert I. Siegel<br>Erika M. Cunningham<br>New Orleans, Louisiana | Counsel for Defendant/Appellee<br>Berkshire Hathaway Specialty<br>Insurance Company |

\* \* \* \* \* \* \* \*

BEFORE: THERIOT, PENZATO, AND GREENE, JJ.

**THERIOT, J.**

This appeal arises from a summary judgment dismissing a contractor's claims against its subcontractor's insurer. For the reasons set forth herein, we amend the judgment and, as amended, affirm.

## FACTS AND PROCEDURAL HISTORY

In 2015, Chet Morrison Contractors, L.L.C. ("CMC") contracted with Shell Pipeline Company, LP ("Shell") to provide pipeline construction services for a project involving horizontal directional drilling of approximately 5,000 feet of 22-inch pipeline ("the Shell project"). In furtherance of its work on the Shell project, CMC engaged a subcontractor, Spartan Directional Drilling, LLC ("Spartan"), to drill a borehole and pull pipe back through the borehole. CMC and Spartan executed a Master Work Contract for Spartan's work on the Shell Project on February 27, 2017, in which Spartan agreed to procure several types of insurance at contractually defined limits. Pertinent to this appeal, the Master Work Contract provided:

> 8. At any and all times during the term of this Contract, except as otherwise provided, [Spartan] agrees to carry insurance of the types and in the minimum amounts as follows. The insurance requirements set forth herein are supplementary to and shall not limit or restrict as to amount, extent or otherwise the defense and indemnity obligations undertaken by [Spartan] in Articles 9, 10, 11 and 15 hereof.
>
> ***
>
> (g) For the Shell pipeline project (project No. HDD Bayou Shaffer – Zydeco HoHo 22") (the "Project"), Builder's Risk Insurance in the amount of $3,200,000, which policy shall provide full coverage for all loss or damage to all or any portion of the pipe making up the pipeline (the "Pipe") while it is in the care, custody or control of [Spartan], and such policy shall be maintained throughout the performance of [Spartan's] work on the Project, including through acceptance of [Spartan's] work by Company. [Spartan's] responsibility for loss or damage to the work or to said materials and equipment to be incorporated therein shall be limited to the deductible amount under such insurance, but not in excess of $10,000.00 and only for such loss or damage which arises out of the negligence of [Spartan].

2

[CMC] shall reimburse [Spartan] for the cost of [builder's] risk as described within this section.

> (h)　All such policies of [Spartan] . . . shall name as additional assureds the Indemnified Chet Morrison Parties[1] to the full extent of the release, defense and indemnity obligations assumed by [Spartan] in Article 10 of this Contract; and shall, to the extent of the defense and indemnity obligations assumed by [Spartan] in Article 10, be endorsed to provide that their coverages are primary as respects other insurances maintained by the additional insureds, regardless of any "other insurance[,"] "cover elsewhere" or similar provisions. . . . All premiums and deductibles shall be for [Spartan's] sole account, except for the Builder's Risk Insurance described in Section 8(g) of this Agreement. [Spartan] shall furnish [CMC] with a certificate or certificates of insurance (on the form attached as Exhibit "A") evidencing the insurance coverages above required, and upon request, shall furnish [CMC] certified copies of all such policies.

Spartan engaged its insurance broker, David Daniel, with Arthur J. Gallagher Risk Management Services, Inc. ("Gallagher"), to procure the insurance coverage required by the Master Work Contract. Because the work to be performed by Spartan under the Master Work Contract was ultimately split into two phases, with Spartan using a subcontractor to perform the work on its behalf in Phase I, and Spartan doing the remainder of the work itself in Phase II, Daniel (in consultation with Spartan and CMC) obtained separate insurance policies for each phase of the work. For Phase I, Daniel obtained a builder's risk policy for Spartan from Traveler's Insurance Company, with CMC named as an additional insured on the policy. Spartan's subcontractor for Phase I obtained its own installation floater policy.[2] For Phase II, Daniel obtained an installation floater policy issued by

---

[1] Article 10 of the Master Work Contract defines the "Indemnified Chet Morrison Parties" as "[CMC], its parent, affiliated or subsidiary corporations, companies and divisions, its customer (including the customer's co-lessees, co-owners, partners and joint venturers), or any of their respective officers, directors, members, employees and vessels."

[2] There are a variety of builder's risk policy forms, as well as significant differences in the language of the numerous exclusions which may be contained within the policy forms. Traditional builder's risk insurance covers the project under construction and the equipment and materials installed during the course of construction, but usually excludes coverage for materials and equipment in transit or storage. Coverage may be available for these items under an installation floater policy or an inland marine policy form that also covers the structure being constructed. See Douglas L. Patin, Builder's risk coverage – Differences in builder's risk policy forms, 4 *Law and Practice of Insurance Coverage Litigation* § 45:26 (July 2023 update). Although the Master Work Contract only required Spartan to obtain a builder's risk policy (with CMC named as an additional insured on the policy) and did not mention an installation floater policy, Daniel testified that Traveler's Insurance Company required Spartan's subcontractor to obtain an installation floater policy before it would issue the builder's risk policy to Spartan for

Berkshire Hathaway Specialty Insurance Company ("Berkshire Hathaway") for Spartan. Although Daniel apparently intended for CMC to be named as an additional insured on this policy, as required by the Master Work Contract, there were no additional insureds included on the Berkshire Hathaway installation floater policy.

After Berkshire Hathaway issued Policy No. 47-MAR001042-01 (the installation floater policy), Gallagher issued a Certificate of Insurance ("COI") for the policy, which was furnished to CMC in accordance with Article 8(h) of the Master Work Contract. However, the COI issued by Gallagher erroneously identified the installation floater policy as a builder's risk policy and erroneously stated that CMC was an additional insured on the policy.

Spartan began its pipeline drilling services for CMC on the Shell Project on November 5, 2017. On November 23, 2017, an incident occurred in which the drill pipe Spartan was using to drill the borehole broke off in the borehole. As a result, the borehole and the pipe had to be abandoned in the ground and were rendered unusable, Shell's servitude was damaged, and the area in or around the project was damaged.

Spartan filed a claim with Berkshire Hathaway for its losses related to the November 23 incident. On January 8, 2019, Berkshire Hathaway paid Spartan $616,017.77 in full and final settlement of its covered losses under the installation floater policy.

On August 21, 2018, CMC filed a petition for breach of contract and declaratory judgment against Spartan, in which it alleged that Spartan failed to provide its services under the Master Work Contract in a proper and workmanlike manner, that these failures constituted breaches and/or defaults of the Master Work

---

Phase I. Daniel testified that it was his belief that the installation floater policy obtained by the subcontractor would insure "the bore and the pullback of the pipe" and Spartan's builder's risk policy would insure the "excess over [Spartan's subcontractor's] policy."

4

Contract, and that CMC suffered significant damages in the form of labor costs, mobilization costs, demobilization costs, storage costs, construction costs, delay costs, replacement services costs, administrative costs, loss of revenue under the Shell Contract, and other associated damages and/or costs.[3]

On April 1, 2019, CMC's insurance broker notified Berkshire Hathaway's claims department by email that CMC was making a claim as an "Additional Named Insured under the above referenced[4] Installation Floater Policy." The email states that as a result of Spartan's failed horizontal directional drill under the Atchafalaya River to Bateman Island, CMC "suffered significant damages" and requests reimbursement for its total costs in the amount of $1,877,512.65. The email does not provide any detail about the "significant damages" alleged by CMC.[5]

On May 1, 2019, Richard Clarke, Berkshire Hathaway's vice president of marine claims, sent CMC a denial letter, explaining that "CMC's Petition against Spartan is for alleged breach of contract regarding the drilling services (and workmanship) under the subject contract, which is not insured under Policy No. 47-MAR001042-01."[6] Although the denial letter did not mention the broker's reference to CMC being an "Additional Named Insured" on the installation floater policy, upon further inquiry from CMC that same day, Clarke explained that

---

[3] Spartan filed a reconventional demand against CMC, alleging that CMC breached the Master Work Contract by failing to comply with the drawings and drilling plan, failing to provide the access and equipment necessary for the project, and failing to render payment due on Spartan's invoice. Spartan alleged that, in addition to the unpaid invoice, it suffered other damages as a result of CMC's breach, such as loss of good will, lost profits, and other expenses. CMC filed a motion for summary judgment on its claims against Spartan, as well as on the claims raised in Spartan's reconventional demand. This motion for summary judgment was denied and is not relevant to the instant appeal, which involves only CMC's claims against Berkshire Hathaway.

[4] The subject line of the notice email contained a reference to the Berkshire Hathaway policy, identifying it as: "INSTALLATION FLOATER POL#47-MAR-001042-01 / Spartan Directional, LLC / Additional Named Insured: Chet Morrison Contractors, LLC – Bateman Island Project."

[5] Although the email refers to the Master Work Contract, CMC's spreadsheet detailing total costs of damages incurred, and the Builder's Risk COI naming CMC as "additional assured," these documents are not attached to the printed email filed in the record, and there is nothing in the printed email itself to indicate that there were actually any attachments to the email.

[6] The denial letter contained in the record is a redline draft copy of the letter; however, this draft copy seems to be what was actually sent to CMC on May 1, 2019. For ease of understanding, we have omitted the language that was struck through in the redline draft from the quoted text.

"[y]our company is not an additional named insured on our policy." CMC forwarded Clarke a copy of the COI issued by Gallagher, which states that CMC is an additional insured on the policy; however, it is unclear whether Clarke responded any further to CMC.

Around the same time that CMC attempted to make a claim as an additional insured on the installation floater policy, Daniel and his assistant, Kari Sonnier, who had assisted him in obtaining the policies for Spartan and issuing the COI, realized that the Berkshire Hathaway installation floater policy did not include an additional insured. Upon discovery of this fact, they made several requests for Berkshire Hathaway to modify the policy (which had expired on January 1, 2018) to include CMC as an additional insured. Daniel and Sonnier urged that it was clear from the insurance application Gallagher submitted on Spartan's behalf that they were requesting that CMC be included on the policy as an additional insured. Berkshire Hathaway denied Gallagher's request to modify the policy, explaining that, regardless of any request made in an application, Berkshire Hathaway had never agreed to provide additional insured coverage to CMC.

On April 20, 2020, CMC filed a supplemental and amending petition in this matter, adding Gallagher as a defendant. CMC's petition alleged that Gallagher was engaged by Spartan as its insurance broker and agent to obtain and place coverage for Spartan's obligations under the Master Work Contract, i.e., to procure a builder's risk policy providing coverage for the work undertaken pursuant to the Master Work Contract, including the drilling of the borehole, with CMC to be named as an additional insured on all policies obtained. CMC's petition alleged that Gallagher owed a duty to CMC "to review, process, procure and deliver the insurance products requested by Spartan that would fulfill Spartan's legal obligations to CMC and for which CMC was a third-party beneficiary, including but not limited to providing builder's risk coverage arising out of the operations

6

undertaken pursuant to the [Master Work] Contract." CMC's petition further alleged that Gallagher breached the duty owed to CMC by obtaining an installation floater policy, which provided different or lesser coverage than a builder's risk policy would have and which did not include CMC as an additional insured, and that CMC sustained loss and damages as a result of this breach. CMC further alleged that in issuing the COI, Gallagher negligently misrepresented that it had obtained a builder's risk policy that provided coverage to CMC as an additional insured, including but not limited to coverage for claims related to the loss of the borehole drilled as part of the Shell project, and that CMC relied on Gallagher's representations to its detriment.

On November 4, 2021, CMC filed another supplemental and amending petition, adding Berkshire Hathaway as a defendant. In this petition, noting that Gallagher had taken the position that the coverage provided under the Berkshire Hathaway installation floater policy was essentially identical to the coverage that would be provided under any builder's risk policy that Gallagher would have procured on Spartan's and CMC's behalf, CMC asserted claims against Berkshire Hathaway "in the alternative, in the event it is found that Gallagher breached no duty to CMC and/or is not otherwise liable to CMC . . . and should the Berkshire Hathaway Policy be found to provide coverage related to the loss of the borehole, which is hereby alleged in the alternative." CMC's alternative claims were as follows: (1) Berkshire Hathaway improperly denied CMC's claim under the policy, wrongfully construing CMC's claim as a breach of contract claim against Spartan, rather than a claim as an additional insured under the policy; (2) Berkshire Hathaway obligated itself to provide additional insured coverage in accordance with the application submitted by Gallagher by communicating to Gallagher that coverage was bound "as offered/requested;" (3) Berkshire Hathaway waived its right to deny coverage under the premise that it did not agree to include CMC as an

7

additional insured on the policy by failing to affirmatively state that coverage was not being provided to CMC as an additional insured; (4) Berkshire Hathaway's statement that coverage was bound "as offered/requested" was a material and negligent misrepresentation that CMC relied on to its detriment by not seeking coverage with another carrier who would provide additional insured coverage, and therefore Berkshire Hathaway should be estopped from denying coverage on a basis inconsistent with its prior representations; (5) Berkshire Hathaway violated its duty of good faith and fair dealing to CMC and has violated La. R.S. 22:1973 and/or La. R.S. 22:1892 by misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue and failing to pay any claim due to CMC as an additional insured; and (6) Berkshire Hathaway was arbitrary and capricious in denying CMC's first-party claim as an additional insured on the policy based on a mischaracterization of the claim as a third-party breach of contract claim and in subsequently refusing to recognize CMC as an additional insured. In addition to damages for Berkshire Hathaway's improper denial of coverage under the policy, CMC's petition sought statutory penalties for Berkshire Hathaway's violation of its duty of good faith and fair dealing and its arbitrary and capricious denial of CMC's claims.

Berkshire Hathaway filed a motion for summary judgment on CMC's claims on the grounds that CMC is not an additional insured under the policy, the installation floater policy does not provide coverage for the type of damages asserted by CMC, and accordingly, there is no basis for the award of bad faith penalties.

CMC, Spartan, and Gallagher each filed an opposition to Berkshire Hathaway's motion for summary judgment. CMC argued that genuine issues of material fact exist regarding whether CMC is entitled to coverage under the installation floater policy for its losses and to bad faith penalties for Berkshire

8

Hathaway's denial of its claims. Spartan argued that summary judgment should be denied because the Berkshire Hathaway installation floater policy provides coverage for CMC's losses under the provision covering property of others under Spartan's care, custody, or control. Gallagher "[did] not take a position on whether the coverage requested in the application or the coverage bound covers any of [CMC's] damages," but argued that summary judgment dismissing CMC's claims against Berkshire Hathaway is inappropriate because genuine issues of fact remain concerning whether Berkshire Hathaway issued the coverage that was requested and agreed to, which is material to the issues of both coverage and bad faith.

A hearing was held on Berkshire Hathaway's motion for summary judgment on April 24, 2023. Following arguments by counsel, the trial court granted Berkshire Hathaway's motion for summary judgment on CMC's claims. A judgment in conformity with this ruling was signed on May 8, 2023, dismissing CMC's claims against Berkshire Hathaway with prejudice.[7]

CMC appealed, arguing that the trial court erred in granting summary judgment and dismissing its claims against Berkshire Hathaway because genuine issues of material fact remain as to whether CMC should be afforded coverage as an additional insured under the policy, whether any reasonable interpretation of the policy affords coverage to CMC, and whether Berkshire Hathaway breached its duty of good faith.

---

[7] The judgment signed by the trial court on May 8, 2023 identifies CMC's claims dismissed by the judgment as "the Third Party Demand filed by [CMC] against [Berkshire Hathaway]." This was clearly an error of phraseology, as CMC's claims against Berkshire Hathaway were not a third party demand. A third party demand is a demand filed by a defendant in a principal action against any person, including a codefendant, who is his warrantor, or who is or may be liable to him for all or part of the principal demand. La. C.C.P. art. 1111. The claims filed by CMC against Berkshire Hathaway, although alleged in the alternative, are claims made by the original plaintiff as part of the principal action, and it is clearly these claims that were dismissed by the trial court on summary judgment. Because the type of demand that was dismissed by the May 8, 2023 judgment is certain from the record, and because La. C.C.P. art. 2164 permits an appellate court to "render any judgment which is just, legal, and proper upon the record on appeal," we deem it proper to amend that judgment to remove the words "Third Party." See *Davenport v. Amax Nickel, Inc.*, 569 So.2d 23, 27 (La.App. 4 Cir. 1990).

## DISCUSSION

Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.[8] The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Troncoso v. Point Carr Homeowners Association*, 2022-0530, p. 16 (La.App. 1 Cir. 1/10/23), 360 So.3d 901, 913.

In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether or not there is a genuine issue of material fact. *Troncoso*, 2022-0530 at p. 16, 360 So.3d at 914. A genuine issue is one as to which reasonable persons could disagree. However, if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Id.* A fact is "material" when its existence or nonexistence is essential to the plaintiff's cause of action under the applicable theory of recovery. Any doubt as to a dispute regarding an issue of material fact must be resolved against granting the motion and in favor of a trial on the merits.

---

[8] Summary judgment procedure is governed by La. C.C.P. art. 966. Louisiana Code of Civil Procedure article 966 was recently amended by 2023 La. Acts. Nos. 317, § 1, and 368, § 1, effective August 1, 2023. This court has determined that the 2023 amendments to La. C.C.P. art. 966, which expanded the exclusive list of documents that are considered competent evidence in support of or in opposition to a motion for summary judgment and changed the duties of parties in supporting and opposing motions for summary judgment, are substantive and therefore cannot be applied retroactively. See *Hawkins v. Hi Nabor Supermarket, LLC*, 2023-0978, p. 3 (La.App. 1 Cir. 2/23/24), --- So.3d ---, ---; see also La. C.C. art. 6 ("In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary."). Accordingly, we will apply the version of La. C.C.P. art. 966 in effect at the time of the April 24, 2023 hearing to the matter before us. See *Hawkins*, 2023-0978 at p. 4, --- So.3d at ---.

10

*Id.* Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Troncoso*, 2022-0530 at p. 17, 360 So. 3d at 914.

The burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Rather, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.* The mover on a motion for summary judgment can meet its burden of proof on the motion by filing supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions with its motion for summary judgment. La. C.C.P. art. 966(A)(4). The court may only consider those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. La. C.C.P. art. 966(D)(2).

Whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be properly resolved within the framework of a motion for summary judgment. *Boudreaux v. Coco*, 2021-1009, p. 4 (La.App. 1 Cir. 4/28/22), 342 So.3d 354, 359-60. An insurance policy is a contract between the parties and should be construed using the general rules of contractual interpretation. *Id.* Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of an insurance contract

11

are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written. See La. C.C. art. 2046; *Sensebe v. Canal Indemnity Co.*, 2010-0703, p. 7 (La. 1/28/11), 58 So.3d 441, 446.

When determining whether a policy affords coverage for an incident, the insured bears the burden of proving that the incident falls within the policy's terms. *Intelligent Mortgage & Consulting Services LLC v. Arbor Lending Group*, L.L.C., 2022-1252, pp. 6-7 (La.App. 1 Cir. 8/1/23), 371 So.3d 554, 559, *writ denied*, 2023-01210 (La. 11/15/23), 373 So.3d 80. An insurance policy, including its exclusions, should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *Savoie v. Anco Insulations, Inc.*, 2020-0584, p. 4 (La.App. 1 Cir. 4/9/21), 322 So.3d 1264, 1267.

Subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. *Boudreaux*, 2021-1009 at p. 5, 342 So.3d at 360. It is the insured's obligation to request the type of coverage needed and to review the policy to determine whether it meets those needs. *Isidore Newman School v. J. Everett Eaves, Inc.*, 2009-2161, pp. 9-10 (La. 7/6/10), 42 So.3d 352, 358. A summary judgment declaring a lack of coverage under an insurance policy may be rendered when there is no reasonable interpretation of the policy, when applied to the undisputed facts shown by the evidence supporting the motion, under which coverage could be afforded. *Boudreaux*, 2021-1009 at p. 5-6, 342 So.3d at 360.

There was considerable duplication in the documents filed by Berkshire Hathaway, CMC, Spartan, and Gallagher either in support of or in opposition to

summary judgment.[9] These documents included: the Master Work Contract (both the redline draft provided to Berkshire Hathaway and the final, fully-executed contract); email correspondence between various parties involved in this matter; the Commercial Insurance Application prepared and submitted by Gallagher to Berkshire Hathaway; the installation floater coverage form provided by Berkshire Hathaway to Daniel for review; Berkshire Hathaway's formal quote and revised binder issued for the installation floater policy; the COI issued by Gallagher; the affidavit and deposition of Berkshire Hathaway's corporate representative regarding underwriting, Kristen Hunter; the deposition of Berkshire Hathaway's corporate representative regarding claims adjustment, Scott Lee; the deposition of Berkshire Hathaway's claims adjuster for this claim, Richard Clarke; the deposition of Gallagher's broker, David Daniel; the deposition of CMC's corporate representative, Jerome Shaw; the deposition of Steven L. Gunter, P.E., regarding damage to the pipe and borehole; the deposition of Spartan's managing member, Boyd Simon; the deposition of Spartan's project manager, Brian Morris; and discovery responses by CMC and Spartan.

We will first address CMC's argument that it is entitled to coverage as an additional insured under the Berkshire Hathaway policy. CMC does not allege that it was actually included as a named insured or an additional insured on the installation floater policy issued by Berkshire Hathaway. Rather, CMC essentially seeks equitable reformation of the insurance contract in order to afford it coverage as an additional insured, based either on the assertion that Berkshire Hathaway

---

[9] Under the applicable version of La. C.C.P. art. 966, as discussed in the previous footnote, "[t]he only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." This list is exclusive, and documents that are not included in the list, such as photographs, pictures, video images, or contracts, may not be filed unless they are properly authenticated by an affidavit or deposition to which they are attached. See La. C.C.P. art. 966, Comments 2015, comment (c). Not all of the documents filed in support of or in opposition to Berkshire Hathaway's motion for summary judgment were proper summary judgment evidence under these provisions. However, since La. C.C.P. art. 966(D)(2) provides that the court shall consider any documents filed in support of or in opposition to the motion for summary judgment to which no objection is made, and no objection was made to any of the documents filed, these documents will be considered in our de novo review. See *Rainey v. Knight*, 2023-0133, p. 3 (La.App. 1 Cir. 11/3/23), 378 So.3d 116, 121.

13

agreed to include CMC as an additional insured on the policy but failed to do so or that Berkshire Hathaway misrepresented the terms of the policy offered, leading CMC to reasonably believe that it was an additional insured on the policy and to rely on that belief to its detriment.

As with other written agreements, insurance policies may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties. *Ardda v. Peters*, 2018-0570, p. 5 (La.App. 1 Cir. 11/2/18), 2018WL5733009, *3. Reformation of the insurance contract is an extraordinary remedy, and the courts exercise it with great caution. 2 *Couch on Ins.* § 26:1. In the absence of fraud, the party seeking reformation has the burden of proving a mutual error in the written policy. Parole evidence is admissible to show mutual error even though the express terms of the policy are not ambiguous. *Samuels v. State Farm Mutual Automobile Insurance Company*, 06-0034, pp. 6-7 (La. 10/17/06), 939 So.2d 1235, 1240.

Pertinent to this assignment of error, the following evidence was filed either in support of or in opposition to summary judgment:

Prior to Spartan beginning work on Phase II of the project, Gallagher submitted a Commercial Insurance Application to Berkshire Hathaway to obtain the necessary insurance coverage for Spartan. Although the Master Work Contract specifically required Spartan to obtain a builder's risk policy, and although Gallagher had previously obtained a builder's risk policy for Spartan (and for CMC as an additional insured) from a different insurer for Phase I, the email accompanying the application stated that the application was for "an *installation floater* I will need for Spartan." (emphasis added). The application submitted by Gallagher was not filled out completely, and although a copy of the Master Work Contract was included with the application, the attached copy of the contract was an unexecuted redline draft containing unfilled blanks and slightly different

14

language regarding the builder's risk insurance requirements than the final version executed by the parties.[10] The application submitted to Berkshire Hathaway listed Spartan as the "First Named Insured," and although there were spaces provided for "Other Named Insured," no other entities were listed as insureds. Despite the fact that the Master Work Contract required Spartan to include the "Indemnified Chet Morrison Parties" as "additional assureds" on all policies, the application submitted to Berkshire Hathaway contained no reference whatsoever to the "Indemnified Chet Morrison Parties" or to an additional insured. CMC's name and address were typed on the second page of the application under "Additional Interest;" however, all other fields in the "Additional Interest" section were left blank, including the box to indicate the type of interest (the options in this box included "Additional Insured," "Breach of Warranty," "Co-Owner," "Employee as Lessor," "Leaseback Owner," "Lienholder," "Loss Payee," "Mortgagee," "Owner," "Registrant," or "Trustee"). On the "Installation/Builders Risk Section" of the application, there was an option to select "Installation" or "Builders Risk" for the type of policy, but both boxes were checked. CMC was listed on the application a second time in the "Installation/Builders Risk Section" of the application under "Additional Interests," but Gallagher again failed to specify the type of interest where requested.

Following receipt of the application from Gallagher, Alan Vernon, Berkshire Hathaway's underwriter, emailed Daniel on October 12, 2017, with a cost estimate for a policy for Spartan, referencing the "AAIS All Risk Including Flood/Quake Installation Form." Daniel replied to Vernon's email, asking to see the coverage

---

[10] Like the fully-executed Master Work Contract, the unsigned draft provided to Berkshire Hathaway required that Spartan obtain a builder's risk policy with the "Indemnified Chet Morrison Parties" named as "additional assureds." However, among other differences, the draft provided to Berkshire Hathaway did not set forth the amount of builder's risk coverage Spartan was required to obtain, did not limit Spartan's responsibility for loss or damage to the work or materials and equipment to be incorporated therein as a result of Spartan's negligence, and did not require CMC to reimburse Spartan for the cost of the builder's risk insurance.

form,[11] which Vernon provided on October 17, 2017, stating, "find attached a copy of the Installation Floater Form you seek...after review, please let me know if any questions?"[12]

Thereafter, on October 18, 2017, Vernon sent Daniel a formal proposal, titled "Inland Marine Quotation," which identified the coverage provided as "Installation Floater" and included an explanation of the coverage provided and perils covered, as well as a list of endorsements to the policy. Berkshire Hathaway's quote identified Spartan as the named insured and contained no mention of the "Indemnified Chet Morrison Parties," CMC, or the inclusion of any additional insured, either in the policy itself or by endorsement. Under "Subjectivities and Conditions," the quote states, in part:

- This quotation is based on the information submitted and is subject to reconsideration if different or additional information is received.

- Some coverages/endorsements provided in the proposal may differ from those requested in the submission, please review carefully[.]

Finally, the last page of the quote contained the following message from Alan Vernon:

Please notify us if any of the information contained herein is incorrect.

Please feel free to contact our office with any questions you may have or if you need any further clarification on any portion of this Proposal of Insurance.

In response to the Berkshire Hathaway quote, Sonnier emailed Vernon (with a copy to Daniel) on November 2, 2017, requesting that Berkshire Hathaway "[p]lease bind Builders Risk coverage per the attached quote." Vernon replied, "By copy of this email we will hold Cover Bound as offered/requested." Later that same day, Dee Pershay, an underwriting technician at Berkshire Hathaway, emailed an Inland Marine Binder to Vernon, Daniel, and Sonnier. Subsequently,

---

[11] The "coverage form" referred to here is the form policy without any endorsements.

[12] Vernon also copied Daniel's assistant, Sonnier, on each of his emails.

16

on November 7, 2017, Berkshire Hathaway sent a revised binder after Sonnier requested a change in the effective date of the policy from November 1, 2017 to November 2, 2017. Like the quote, the revised binder identified the coverage as "Installation Floater," Spartan as the named insured, and contained no mention of the "Indemnified Chet Morrison Parties," CMC, or the inclusion of any additional insured, either in the policy or in the list of endorsements.

Berkshire Hathaway issued Policy No.: 47-MAR-001042-01 to Spartan, effective November 2, 2017 through January 1, 2018, and a copy of the policy was sent to Gallagher with a cover letter dated November 7, 2017. Like the quote and the binder, the policy documents clearly identify the policy as an installation floater policy and the named insured as Spartan. The policy documents, including the endorsements, contain no mention of the "Indemnified Chet Morrison Parties," CMC, or any additional insured.

Berkshire Hathaway emailed Gallagher an invoice for the installation floater policy on November 9, 2017. The invoice identified the "Policy Type" as "Marine – Installation Floater," and the "Insured" as "Spartan." There is no reference to the "Indemnified Chet Morrison Parties," CMC, or any additional insured on the Berkshire Hathaway invoice.

Gallagher issued COI Number 867384832 for Policy No.: 47-MAR-001042-01 on November 6, 2017.[13] The COI identifies the "Type of Insurance" as "Builders Risk," the "Insured" as Spartan, and the "Certificate Holder" as CMC. On the line containing the policy information, such as type of insurance, policy number, effective dates, and coverage limits, there is a space to indicate an additional insured on the policy, which is not checked off. However, the following language is inserted under "Description of Operations/Locations/Vehicles": "Certificate Holder is an Additional Insured, pursuant to and subject to the policy's

---

[13] Although the COI is dated November 6, 2017 (the day before Sonnier requested a change in the policy's effective date), the COI lists the revised effective date.

terms, definitions, conditions[,] and exclusions." The COI also contains the following language:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.
>
> IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. . . . A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).
>
> THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

Daniel testified that as an insurance broker, he works with clients, such as Spartan, to identify their insurance needs, then goes into the insurance market to try to locate insurance for the client to purchase that will fit those needs. In this case, Spartan provided the Master Work Contract to Daniel in order to obtain the coverage necessary to meet the contract's insurance requirements. Daniel testified that Sonnier assisted him in putting insurance applications together and sending them out to various markets to get quotes, but he was solely responsible for reviewing the draft of the Master Work Contract and determining what coverage was needed. He also communicated with Spartan and CMC regarding the insurance coverage required. For Phase I of the work, Daniel obtained a builder's risk policy for Spartan, with CMC named as additional insured. For Phase II,

18

Daniel testified that he assisted Spartan in purchasing an installation floater policy (rather than a builder's risk policy) because he believed that it provided the desired coverage, i.e., coverage for the borehole and pipe. Daniel believed that the insurance application prepared and submitted by his office to Berkshire Hathaway requested that CMC be included as an additional insured on the policy. Because he had never in his career had an insurer "push back" on adding an additional insured to a builder's risk or installation floater policy, and because he never received any response from Berkshire Hathaway informing him that they were not including CMC as an additional insured on the policy offered, he testified that he simply assumed that CMC was an additional insured under the policy.

Daniel testified that when he requests that an insurer bind coverage, this means that the insurer has given a quote, he accepts it, and he is asking the insurer to bind the coverage and issue the policy. Daniel admitted that there was no indication on the binder issued by Berkshire Hathaway that CMC was an additional insured on the policy. Although he was not certain how an additional insured would have been indicated on the binder, he speculated that if a policy included coverage for an additional insured, there would probably be a specific endorsement to the policy listing the additional insured.

Although the Berkshire Hathaway cover letter accompanying the copy of the policy sent to Gallagher indicates that the policy was sent on November 7, 2017, Daniel testified that "we don't ever recall receiving it." According to Daniel, he did not get a copy of the policy until he requested it from Berkshire Hathaway following the loss. Despite not receiving a copy of the policy, Daniel testified that his office issued a COI for the policy. Daniel admitted that Sonnier did not contact Berkshire Hathaway to confirm that CMC was included on the policy as an additional insured before issuing the COI, even though she had done so before issuing the COI for Phase I, but explained that she did so because Vernon's email

19

stated that coverage was bound as requested, and they had requested an additional insured in the application.

Spartan's managing member, Boyd Simon, testified that Daniel had been Spartan's insurance broker for some time, and it was his practice to provide a contract to Daniel and trust him to select the appropriate insurance for a project. Simon generally deferred to Daniel on all insurance issues. With regard to the Berkshire Hathaway policy at issue herein, Simon testified that he was not involved in preparing the insurance application and never read the installation floater policy to determine what coverage was provided or whether it satisfied the requirements of the Master Work Contract.

Kristen Hunter, Berkshire Hathaway's corporate representative, testified that the coverage Berkshire Hathaway offered to Spartan did not include any additional insureds. Although there was nothing in the underwriting file documenting whether or not the underwriters understood that Gallagher was requesting additional insured coverage when it listed CMC under "Additional Interest" without specifying any type of interest, Hunter testified that she was certain that additional insured coverage was not offered to Spartan because it was not included on the quote.[14] She maintained that Berkshire Hathaway's quote, which was sent to Gallagher in response to the application for coverage, indicated the coverage that Berkshire Hathaway was willing to offer to Spartan. She explained that this offered coverage did not include an additional insured, and Gallagher was alerted to that fact by the language in the quote advising that "Some coverages/endorsements provided in the proposal may differ from those requested in the submission. Please review carefully." That quote was accepted by Gallagher in accordance with its terms, and thereafter, Berkshire Hathaway sent a

---

[14] Hunter testified that, as a practice, Berkshire Hathaway does not offer additional insured coverage at all, but she could not say for certain that this practice was in place in 2017 when this policy was issued, because she was not working for the company at that time.

binder to Gallagher and bound and issued the policy to Spartan. Berkshire Hathaway did not agree to include any entity, including CMC, as an additional insured, and the policy that was quoted, bound, and issued by Berkshire Hathaway does not include any additional insureds. Hunter testified that as a practice, Berkshire Hathaway does not issue or approve COIs, and they did not do so in this case. She further testified that the COI issued by Gallagher was inaccurate as to the policy actually bound and issued.

After our de novo review, we find that there is no evidence before the court on the motion for summary judgment that would create a genuine issue of material fact as to whether Berkshire Hathaway either offered or agreed to include CMC on the policy as an additional insured. Regardless of whether or not Berkshire Hathaway's underwriters understood (or should have understood) from the incomplete information provided in the application that Spartan sought to obtain a policy with coverage for CMC as an additional insured, there is no evidence before the court that Berkshire Hathaway actually offered (or implied that it was offering) Spartan such coverage. Berkshire Hathaway's quote detailed the coverage offered to Spartan and contained a warning to "review carefully" because "[s]ome coverages/endorsements provided in the proposal may differ from those requested in the submission." As previously noted, an insurer is free to limit coverage in any manner it desires, and the insured has the obligation to review the policy to ensure that it meets his needs. *Boudreaux*, 2021-1009 at p. 5, 342 So.3d at 360; *Isidore Newman School*, 2009-2161 at pp. 9-10, 42 So.3d at 358. Spartan's managing member admitted that he did not review the insurance application submitted on Spartan's behalf or the Berkshire Hathaway policy to determine whether the coverage it provided met Spartan's needs, and Spartan's broker testified that his office issued the COI without either reviewing a copy of the policy or contacting Berkshire Hathaway to verify the coverage. Spartan failed to obtain a policy that

21

named the "Indemnified Chet Morrison Parties" as "additional assureds." However, this failure to obtain the proper coverage and to ensure that CMC is listed as an additional insured cannot be imputed to Berkshire Hathaway. See *TCC Contractors, Inc. v. Hospital Service District No. 3 of the Parish of Lafourche*, 2010-0685, p. 12 (La.App. 1 Cir. 12/8/10), 52 So.3d 1103, 1110; see also *South Louisiana Ethanol, LLC v. Messer*, 932 F.Supp.2d 735, 740 (E.D. La. 2013) (although an insured subcontractor was contractually obligated to list a contractor as a loss payee in its insurance contract, the contractor was not entitled to coverage as a third party beneficiary to the insurance contract simply because the insured intended to cover the third party, where there was no clear expression of intent to benefit the third party in the insurance contract). Further, Vernon's email stating that coverage was bound as "offered/requested" does not create an issue of fact as to whether Berkshire Hathaway agreed to cover CMC as an additional insured, as the email chain in evidence shows that the statement was made in reply to an emailed request for Berkshire Hathaway to bind the coverage "per the attached quote," which indisputably did not identify CMC as an additional insured. Having offered no evidence to create a genuine issue of material fact as to the existence of mutual error or fraud warranting reformation of the policy, summary judgment was properly rendered dismissing CMC's claim that it is entitled to coverage as an additional insured on the Berkshire Hathaway policy.

CMC also argues that the trial court erred in granting summary judgment because genuine issues of material fact exist as to whether there is a reasonable interpretation of the policy that would result in coverage for the loss of the borehole. However, in light of the fact that the sole basis for CMC's claims against Berkshire Hathaway is that it is entitled to coverage *as an additional insured* under the policy in the event the court finds that the Berkshire Hathaway Policy provides coverage related to the loss of the borehole, our resolution of the

22

additional insured issue in this matter renders the coverage issue moot.[15] Accordingly, we pretermit consideration of CMC's arguments concerning whether the installation floater policy provides coverage for the types of losses it sustained.

CMC also argues on appeal that since genuine issues of fact remain as to whether CMC is entitled to coverage under the policy, the trial court erred in dismissing its claims for damages and bad faith penalties under La. R.S. 22:1973, which provides that an insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured and/or the claimant. The Louisiana Supreme Court has held that despite the references to a "claimant" in La. R.S. 22:1973, the penalty provisions are only applicable to a person insured by the contract, which excludes a third-party claimant. See Langsford v. Flattman, 2003-0189, pp. 2-4, (La. 1/21/04), 864 So.2d 149, 151 (La. 2004); see also Team Contractors, L.L.C. v. Waypoint NOLA, L.L.C., 780 F. App'x 132, 134 (5th Cir. 2019) (holding that a third-party claimant who was not an additional insured under the policies issued to its contractor and subcontractor could not make a claim for bad faith penalties under La. R.S. 22:1973). Nevertheless, given our conclusion that CMC is not entitled to coverage under the Berkshire Hathaway policy as an additional insured, the trial court did not err in granting summary judgment dismissing CMC's claims for bad faith penalties. This assignment of error is without merit.

**CONCLUSION**

For the reasons set forth herein, the May 8, 2023 judgment of the trial court, which granted Berkshire Hathaway Specialty Insurance Company's motion for summary judgment and dismissed Chet Morrison Contractors, L.L.C.'s claims

---

[15] Although Spartan argued in opposition to Berkshire Hathaway's motion for summary judgment that the Berkshire Hathaway installation floater policy provides coverage for CMC's losses under the provision of the policy covering property of others under Spartan's care, custody, or control, CMC's petition did not contain any allegation that it suffered a loss or damage to its property while it was under Spartan's care, custody, or control, or that it was entitled to coverage as a third party to the policy under that provision. Rather, CMC's petition specifically alleged that its claim under the policy is a first-party claim based on its status as an additional insured.

against it with prejudice, is amended as set forth above to remove the reference to a "Third Party," and as amended, is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Chet Morrison Contractors, L.L.C.

**AMENDED AND AFFIRMED AS AMENDED.**

24